IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TONI KELTON,

                Plaintiff,

vs.                              Case No. 10-1323-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                Defendant.

MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On January 8, 2009, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 8-18). Plaintiff alleges that she has been disabled since June 15, 2007 (R. at 8). Plaintiff is insured for disability insurance benefits through December 31, 2009 (R. at 10). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset date (R. at 10). At step two, the ALJ found that plaintiff had the following severe impairments: generalized

anxiety disorder/social phobia and a history of bipolar disorder (R. at 10). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 11). After determining plaintiff's RFC (R. at 13), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 17). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 17-18). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 18).

**III. Are the ALJ's RFC findings supported by substantial evidence in the record, including the medical evidence?**

Plaintiff argues that the Appeals Council erred by failing to properly consider the opinions of Dr. Lear, a treating psychiatrist (Doc. 10 at 4-7). Plaintiff further argues that the ALJ erred in his consideration of the opinions of Dr. Dipeolu, a consulting psychologist (Doc. 10 at 7-10). In conclusion, plaintiff contends that the ALJ's RFC findings are inconsistent with the medical evidence of record (Doc. 10 at 10).

The ALJ indicated in his RFC findings that plaintiff's only limitations were that she must avoid jobs requiring significant interaction with coworkers and the general public (R. at 13). In making this finding, the ALJ gave some weight to the opinions of Dr. Dipeolu, a consulting psychologist. In his report, dated July 18, 2007, Dr. Dipeolu diagnosed plaintiff with social

phobia, and also mentioned the possibility of bipolar disorder.

He concluded his report as follows:

> Ability to Perform Work-Related Functions: Ms. Kelton was well oriented X3. Her thought process and content were within normal limits. She denied hallucinations across all modalities. Her concentration, fund of information, level of abstraction, judgment, insight, and memory were for the most part within normal limits. Ms. Kelton endorsed psychological symptoms of social phobia. Given the nature of this diagnosis, Ms. Kelton may not be able to engage in work related functions outside of her home unless these symptoms are controlled. Also, she will continue to experience difficulty performing ADL [activities of daily living] that requires her to be outside of her home (i.e., driving). Ms. Kelton should be able to manage her finances independently.

(R. at 272).

The ALJ gave the following consideration to Dr. Dipeolu's report:

> As for the opinion evidence, consulting psychological examiner Dr. Dipeolu stated that the claimant exhibited normal thought process and content, and had normal concentration, fund of information, level of abstraction, judgment, insight, and memory. Based upon the claimant's endorsement of symptoms of social phobia, Dr. Dipeolu opined that the claimant might not be able to engage in work related functions outside of the home unless these symptoms were controlled. Dr. Dipeolu also stated that the claimant will experience difficulty performing daily activities that require her to be outside of her home, such as driving (exhibit 4F). The claimant did not tell Dr. Dipeolu that she had recently been released from the Women's recovery program the prior month and that she had been able to live in a group home without

6

>reported problem[s]. In addition, Dr. Dipeolu assigned a GAF score of 66, indicating only mild symptoms, and contradicting the degree of limitation reflected in this opinion. Dr. Dipeolu's opinion has been given substantial weight in documenting the claimant's moderate limitations in interacting with others. However, based upon the claimant's omission of evidence such as her ability to drive as needed and her recent stay in a group home (showing the ability to successfully interact with others), Dr. Dipeolu's opinion that the claimant might not be able to work outside of the home has not been given substantial weight.

(R. at 16). The ALJ then summarized the basis for his RFC findings as follows:

>In sum, the claimant simply alleges a greater degree of debilitation than what objective evidence can support. The above residual functional capacity assessment is supported by the claimant's previous ability to work in occupations requiring substantial interactions with the public, such as waitressing, and by consistent psychological reports that the claimant had no significant impairment in the ability to maintain concentration, persistence, or pace. The claimant has some limitations in the ability to interact with others; however, her daily activities as documented in therapist notes and earlier statements show that this is only to a moderate degree. She does not appear to lead the isolative lifestyle described during testimony, but credibly avoids more than superficial interactions with unfamiliar people and avoids being in crowded areas.

(R. at 16). In making his RFC findings, the ALJ rejected the opinion of the state agency consultant who found that plaintiff did not have a severe mental disorder (R. at 16). As noted above, the ALJ gave some weight to the opinion of Dr. Dipeolu.

7

The ALJ gave little weight to the opinion of Dr. Dipeolu that plaintiff might not be able to work outside of the home because "claimant did not tell Dr. Dipeolu that she had recently been released from the Women's recovery program the prior month and that she had been able to live in a group home without reported problem[s]" (R. at 16). The ALJ asserted that plaintiff's recent stay in a group home showed "the ability to successfully interact with others" (R. at 16). Dr. Dipeolu evaluated plaintiff on July 18, 2007 (R. at 270). Plaintiff testified that she was in an inpatient drug/alcohol treatment program at the Women's Recovery Center from April 30, 2007 through June 15, 2007 (R. at 24). The report from Dr. Dipeolu states that plaintiff denied any history of substance abuse or current use (R. at 270). However, the record in this case does not contain any medical records pertaining to the inpatient treatment;[1] there is no evidence in the record that plaintiff was able to live in the group home without reported problems, or that her stay in the group home showed the ability to successfully interact with others.

The absence of evidence is not evidence. <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1491 (10th Cir. 1993). Given the absence of any evidence pertaining to plaintiff's ability to

---

[1] Plaintiff's attorney, at the hearing on November 12, 2008, stated that these records are not in the file (R. at 22-23).

interact with others while in a group treatment program, the ALJ simply speculated that her recent stay in a group home showed the ability to successfully interact with others and without problems.  An ALJ cannot make speculative inferences given the absence of any evidence on that subject; furthermore, an ALJ cannot reject a medical source opinion based on speculation.  See McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).  The factual findings of the ALJ should be supported by substantial evidence in the record.  Madrid v. Barnhart, 447 F.3d 788, 790 (10th Cir. 2006).  In the absence of any evidence to support the ALJ's assertion that plaintiff's recent stay in a group home showed plaintiff's ability to successfully interact with others without problems, the court finds that this was an invalid basis for discounting Dr. Dipeolu's opinion that plaintiff might not be able to work outside the home.

In addition, the ALJ argued that the GAF[2] score of 66 given by Dr. Dipeolu, indicating only mild symptoms, contradicted the degree of limitation reflected in his opinion (R. at 16).  However, there is no medical opinion evidence that a GAF score of 66 "contradicts" the opinions of Dr. Dipeolu.  The adjudicator is not free to substitute his/her own medical opinion for that of a

---

[2]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34).

medical source opinion.  See Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  An ALJ may reject a medical source opinion outright only on the basis of contradictory medical evidence and not due to the ALJ's own credibility judgments, speculation or lay opinion.  See Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004).

Furthermore, because a GAF score may not relate to a claimant's ability to work, the score, standing alone, without further explanation, does not establish whether or not plaintiff's impairment severely interferes with an ability to perform basic work activities.  See Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004); Eden v. Barnhart, 109 Fed. Appx. 311, 314 (10th Cir. Sept. 15, 2004).  GAF scores are not considered absolute determinants of whether or not a claimant is disabled.  Heinritz v. Barnhart, 191 Fed. Appx. 718, 722 (10th Cir. Aug. 10, 2006).  There is no medical opinion evidence in this case indicating that plaintiff, despite severe mental impairments, is still able to work.  For these reasons, on remand, the ALJ will need to consider the GAF score given by Dr. Dipeolu in light of all the medical evidence, including the other medical opinion evidence in this case.

Following the ALJ decision, plaintiff submitted to the Appeals Council opinions from Dr. Lear.  Dr. Lear was plaintiff's treating psychiatrist from 2005-2007, and saw plaintiff on six

occasions (R. at 233-234, 235-236, 237-238, 239-241, 246-247, 249). On March 8, 2006, Dr. Lear stated that plaintiff had bipolar affective disorder. He indicated that she is currently not emotionally stable enough to work, and that her medications would not assist her in being able to work. He stated that plaintiff was irritable and could become verbally aggressive. He believed it was possible that plaintiff met the disability criteria for social security disability (R. at 305-306). On January 30, 2007, Dr. Lear again stated that plaintiff's bipolar disorder prevented plaintiff from working (R. at 307). The Appeals Council indicated that they considered this additional evidence, but stated that it did not provide a basis for changing the ALJ's decision (R. at 1-2).

If, as happened here, the Appeals Council explicitly stated that it considered the evidence, there is no error, even if the order contains no further discussion. Martinez v. Astrue, 389 Fed. Appx. 866, 868-869 (10th Cir. Aug. 3, 2010); see Martinez v. Barnhart, 444 F.3d 1201, 1207-1208 (10th Cir. 2006)(while an express analysis of the Appeal's Council determination would have been helpful, it is not required). The court takes the Appeals Council at its word when it states that it has considered a matter. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).

However, in evaluating the Commissioner's denial of benefits

11

under the substantial evidence standard, the district court must consider qualifying new evidence submitted to the Appeals Council.  The district court's very task is to determine whether the qualifying new evidence upsets the determination of the ALJ that plaintiff was not disabled, Martinez, 389 Fed. Appx. at 869, or whether the new evidence submitted to the Appeals Council provides a basis for changing the ALJ's decision.  Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).

As noted above, the court has already found that the ALJ erred in his rationale for discounting the opinions of Dr. Dipeolu.  Furthermore, the new evidence submitted to the Appeals Council is from Dr. Lear, a treatment provider whose opinions are generally entitled to greater weight.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  Dr. Lear's opinion that plaintiff cannot work certainly supports the opinion of Dr. Dipeolu that plaintiff may not be able to work.  Furthermore, there is no medical opinion evidence indicating that plaintiff is able to work despite her severe mental impairments.  In light of the opinions of Dr. Lear and Dr. Dipeolu that plaintiff is or may be disabled, and the errors by the ALJ in his rationale for discounting the opinions of Dr. Dipeolu, the court finds that substantial evidence does not support the ALJ's determination that plaintiff is not disabled.

Finally, on remand, the ALJ should also consider the

opinions of ARNP Donna Powers, who treated plaintiff on nine occasions between March 6, 2008 and October 14, 2008.  On all nine occasions, ARNP Powers diagnosed plaintiff with psychotic disorder.  She indicated on six of those nine visits that plaintiff had signs of psychotic process, and on four occasions she found that plaintiff was hallucinating.  On eight of the nine visits, she found that plaintiff's social judgment was poor.  She also noted that plaintiff has a history of assaultive behavior (R. at 290-304).  Her findings correlate with the opinion of Dr. Dipeolu that plaintiff's social phobia might prevent plaintiff from working, and with Dr. Lear's opinion that plaintiff was irritable and could become verbally aggressive.  Furthermore, the diagnosis of psychotic disorder and hallucinations should also be considered by the ALJ when determining if plaintiff is able to work.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 20th day of September 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge